UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHELLE-LAEL B. NORSWORTHY,

Plaintiff,

v.

OFFICER FELIX, et al.,

Defendants.

Case No.: 1:23-cv-01151-KES-EGC

FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

[14-DAY DEADLINE]

Doc. 45

Plaintiff Michelle-Lael B. Norsworthy, a former state prisoner represented by counsel, proceeds in this civil rights action under 42 U.S.C. § 1983 on a Fourteenth Amendment equal protection claim against Defendants Felix, Haynes, and Villanueva, and an Eighth Amendment failure-to-protect claim against Defendants Cowing and Villanueva. (Doc. 23 at 14.)[1] Pending before the Court is Defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (Doc. 45), which Plaintiff opposes (Doc. 49). Defendants replied. (Docs. 51, 52.) For the reasons set forth below, the undersigned recommends that the motion be granted in part and denied in part, with leave to amend. Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Villanueva should proceed, and Plaintiff should be permitted to file an

[1] Defendant Sergeant Cowing appears in this action as "B. Cowings (erroneously sued as Cowing)." (*See* Doc. 27 at 1.) For consistency with the caption, the undersigned refers to this Defendant as Cowing.

amended complaint addressing the deficiencies in her remaining claims.

## I. BACKGROUND

### A. Procedural History

Plaintiff was housed at the Central California Women's Facility ("CCWF") from March 2019 until her release on parole on January 13, 2022. (Doc. 1 ¶¶ 1, 7; Doc. 27 at 2.) Represented by counsel, she filed this action on August 2, 2023. (Doc. 1.) In October 2023, Defendants moved to dismiss the complaint under Rule 12(b)(6). (Doc. 7.) Before doing so, defense counsel met and conferred with Plaintiff's counsel about the deficiencies Defendants perceived in the complaint; Plaintiff's counsel confirmed that Plaintiff "would not amend her complaint." (Doc. 7-3 ¶ 2.) The Court then denied the motion to dismiss as premature and advised that the complaint would be screened. (Doc. 17.)

On September 13, 2024, the previously assigned magistrate judge screened the complaint and found that it stated cognizable equal protection claims against Defendants Felix, Haynes, and Villanueva and Does 1 through 50, and cognizable failure-to-protect claims against Defendants Cowing and Villanueva and Does 1 through 50. (Doc. 23 at 14.) Defendants answered. (Doc. 27.) After an early settlement conference did not resolve the case, the Court issued a discovery and scheduling order. (Docs. 41, 43.)

On May 21, 2025, Defendants filed the pending motion for judgment on the pleadings, together with a request for judicial notice and exhibits, and a motion to stay discovery. (Docs. 45, 46.) Defendants also submitted a notice to seal a surveillance video of the August 4, 2021 incident, lodged on a USB drive as Exhibit C to their request for judicial notice. (Docs. 44, 45-3 at 17, 47.) Plaintiff opposed the motion and the request for judicial notice. (Docs. 49, 49-1.) The Court stayed discovery pending resolution of the motion and vacated the remaining scheduling deadlines. (Doc. 54 at 6.) The action was then reassigned to the undersigned on May 4, 2026. (Doc. 55.)

This is not the first time Plaintiff has sought to litigate these claims. In *Norsworthy v. Diaz, et al.*, No. 1:20-cv-00813-KES-HBK (E.D. Cal.), an action concerning Plaintiff's medical care at CCWF, Plaintiff, through the same counsel, moved in June 2022 to add equal protection

and failure-to-protect claims against Defendants Felix, Haynes, Villanueva, and Cowing based on substantially the same events. (*See* Doc. 7-2 at 124-39.) In February 2023, the assigned magistrate judge recommended denying leave to add those claims, both because they were unrelated to the medical-care claim and because, as pleaded, they were futile; among other things, the magistrate judge found no allegations that Felix, Haynes, and Villanueva "had any involvement" in the challenged writeups, and found Plaintiff's allegation about Cowing's "note" vague and lacking any timeframe. (*Id.* at 137:20-21, 138:21-23.) The district judge adopted those findings and recommendations in March 2023. (*Id.* at 141-42.)[2] Plaintiff filed this action five months later.

**B. Allegations of the Complaint**

Plaintiff is a post-operative transgender woman. (Doc. 1 ¶ 7.) She alleges that, throughout her incarceration at CCWF, custody staff "(including Defendants Felix, Haynes, and Villanueva)" and inmates insulted and belittled her with statements such as "you are a man," "you sound like a man," "your voice is too deep," "you don't look like a woman," and "you don't belong here," and referred to her as "he" or "him," and that staff gave "tacit approval" to harassing inmates by failing to intervene. (*Id.* ¶ 29.) Plaintiff did not witness Felix, Haynes, or Villanueva make demeaning statements about other inmates' gender, sex, or sexuality. (*Id.* ¶ 31.)

Plaintiff further alleges that "Felix, Hayes, and Villanueva issued meritless Form 115 and 128-A disciplinary writeups" to her, "one for trying to use a tablet kiosk to send an email to her husband and another for doing boxing exercises (non-sparring) with a fellow inmate," which "damaged her chances of obtaining parole." (*Id.* ¶ 32.) The Form 115 writeups were later voided; the Form 128 writeups remained on her record. (*Id.*) Plaintiff alleges that, because the Form 115 writeups were voided, "the logical conclusion is that [they] were meritless from the outset and only issued because Ms. Norsworthy is a post-operative, transgender woman," and that the writeups "appeared to form the basis" of the parole board's August 2020 decision to deny her

[2] The Court may take judicial notice of its own records in other cases. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Final judgment has since been entered for the defendants in *Diaz*, and Plaintiff's appeal is pending. *Norsworthy v. Diaz, et al.*, No. 1:20-cv-00813-KES-HBK, Docs. 135, 136, 139 (E.D. Cal.); No. 26-4980 (9th Cir.). Defendants cite the *Diaz* ruling only as procedural history and expressly disclaim reliance on it as precedent (Doc. 51 at 2:11-16, 3:18-22), and they do not argue claim or issue preclusion in their motion. The undersigned therefore does not treat the *Diaz* ruling as binding, and notes that the proposed pleading considered there differs from the complaint in this action in several respects.

parole. (*Id.*) By contrast, an inmate who harassed Plaintiff received a Form 128 writeup that "one of the CCWF custody lieutenants" later had removed from that inmate's file. (*Id.*) Plaintiff alleges that Defendants' "animus and discriminatory intent (as evidenced by the slurs) coupled with Defendants unlawful behavior in intentionally and without merit writing up Ms. Norsworthy for the purpose of obstructing her chance of parole" violated her equal protection rights. (*Id.* ¶ 33.)

On August 4, 2021, one week before a scheduled parole hearing, another inmate in the Unit 505 dayroom began calling Plaintiff names, yelled that she intended to hurt Plaintiff, and chased Plaintiff "with fists clenched." (*Id.* ¶¶ 37-39.) Plaintiff could not leave the dayroom and had nowhere to hide. (*Id.* ¶¶ 38-39.) Plaintiff "turned away from the other inmate's blows" and tried to keep the dayroom tables between herself and her attacker. (*Id.* ¶¶ 6, 40-41.) "Several officers sat idle in their office, watching," and "[f]or several minutes" Plaintiff was "continually chased." (*Id.* ¶ 41.) "All the while, the officers whose job it was to protect Ms. Norsworthy (including Officer Villanueva) waited and watched." (*Id.*) Eventually, the officers, including Villanueva, came out of their office and ordered the other inmate to the floor; the inmate was not handcuffed, was escorted out, and was returned to her cell, one cell from Plaintiff's, less than two hours later. (*Id.* ¶¶ 42-43.) Villanueva initially described the incident as a "mutual attack." (*Id.* ¶ 41 n.2.)

On August 5, 2021, "Sergeant Pack wrote a general chrono 128-B" describing the incident as a "mutual verbal altercation," which Plaintiff alleges was false, and Plaintiff started the grievance process that day.[3] (*Id.* ¶¶ 45-46.) On August 13, 2021, the parole board found Plaintiff suitable for parole. (*Id.* ¶ 47.) Plaintiff "later learned" that Cowing told the inmate who attacked her that Plaintiff had written a "note" against that inmate, which Plaintiff believes "refers to the statements she made following the August 4th attack." (*Id.* ¶ 48.) On information and belief, Plaintiff alleges that staff, including Cowing and Villanueva, "tried to pit inmates against [her] to sabotage her parole eligibility." (*Id.* ¶¶ 48, 68.) On October 1, 2021, Plaintiff's grievance was granted on the grounds that surveillance video showed she was not the aggressor, and the chrono

[3] Defendants' motion spells the name both "Pack" and "Peck." (*See* Doc. 45-1 at 12:13, 12:26, 13:20, 20:27.) The undersigned proceeds with "Pack," as referenced in the complaint. (Doc. 1 ¶ 45.)

was updated. (*Id.* ¶ 49.) Plaintiff alleges that "had [she] not filed a grievance, Sergeant Cowing's version of the event would have stood." (*Id.* ¶ 49.) On January 13, 2022, Plaintiff was released on parole. (*Id.* ¶ 7.)

## II. LEGAL STANDARDS

### A. Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings. *Westlands Water Dist. v. Bureau of Reclamation*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992). Any party may move for judgment on the pleadings after the pleadings are closed but within such time as to not delay trial. Fed. R. Civ. P. 12(c). The standard for evaluating a motion for judgment on the pleadings is essentially the same as the standard applied to a Rule 12(b)(6) motion. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Judgment on the pleadings is proper when there is either a "lack of a cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Conclusory allegations and unwarranted inferences are insufficient to defeat such a motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In a section 1983 action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.

### B. Judicial Notice and Incorporation by Reference

In ruling on a Rule 12 motion, a court generally may not consider material outside the pleadings without converting the motion into one for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); Fed. R. Civ. P. 12(d). Two exceptions apply. First, a court may judicially notice a fact that is "not subject to reasonable dispute" because

it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). But "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. A court "cannot take judicial notice of disputed facts contained in…public records." *Id.*; *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). Second, a document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation omitted). The doctrine does not permit a defendant to present its own version of the facts and use it to resolve factual disputes against the plaintiff at the pleading stage. *Id.* at 1002-03.

## III. DISCUSSION

### A. The Screening Order Does Not Foreclose the Motion

Plaintiff argues that because the Court already screened the complaint and found that it states cognizable claims, the motion should be denied. (Doc. 49 at 11-12.) The undersigned disagrees. The legal standard applied at screening is the same standard that governs a motion to dismiss for failure to state a claim. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). However, a screening order is entered *sua sponte* on a one-sided record, without the benefit of adversarial briefing. It is an interlocutory order that "may be revised at any time" before entry of judgment. Fed. R. Civ. P. 54(b); *see City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (district court possesses inherent power to reconsider interlocutory orders). Nothing in the Screening Order purports to bar Defendants from testing the sufficiency of the complaint through a properly noticed motion.

Further review is particularly warranted here. A court may screen a complaint under 28 U.S.C. § 1915A only if, at the time the complaint is filed, the plaintiff is a prisoner. *Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281, 1284 (9th Cir. 2017). Plaintiff had been released on parole more than eighteen months before she filed this action. (Doc. 1 ¶ 7.) In addition, the complaint was drafted by counsel, and the liberal construction afforded to pro se pleadings, which the Screening Order applied (Doc. 23 at 11:25, 14:1), does not extend to it. *See Hebbe v. Pliler*,

627 F.3d 338, 342 (9th Cir. 2010) (liberal construction applies to pleadings filed by pro se litigants). Therefore, the undersigned evaluates Defendants' arguments under the ordinary Rule 12(c) standard.

**B. Request for Judicial Notice**

Defendants ask the Court to take judicial notice of three records:

**Exhibit A**: an excerpt of the transcript of Plaintiff's August 14, 2020 parole suitability hearing, consisting of the panel's pronouncement of its decision;

**Exhibit B**: the panel's written proposed decision from that hearing; and,

**Exhibit C**: surveillance video of the August 4, 2021 dayroom incident.

(Docs. 45-2, 45-3.) Plaintiff opposes taking judicial notice of all three records. (Doc. 49-1.)

*1. Exhibits A and B*

Records of a state parole board's proceedings are matters of public record whose existence and contents may be judicially noticed. *See Lee*, 250 F.3d at 689-90. Therefore, the undersigned takes judicial notice that the parole board conducted a hearing on August 14, 2020, denied parole for one year, granted Plaintiff's objection to consideration of voided Form 115s, and made the statements recorded in the decision transcript. (Doc. 45-3 at 2-11, 14-15.) However, the undersigned does not take notice of the truth of any statement in those documents or of any disputed inference drawn from them, including Defendants' contention that the documents establish that the challenged writeups played no role in the denial of parole. *Khoja*, 899 F.3d at 999-1000. That inference is disputed. Although the panel granted Plaintiff's objection to the use of voided Form 115s (Doc. 45-3 at 15), it also stated that Plaintiff's "poor judgment and lack of insight is also reflected in the writeup that was voided but the facts of which reveal, in 2019, you were teaching others in prison to box and fight back" (*id.* at 8:9-14), and it recommended that Plaintiff receive "[n]o more 115's or 128A's" (*id.* at 14). In any event, because the undersigned resolves Plaintiff's equal protection claim on other grounds, it does not rely on Exhibits A and B.

*2. Exhibit C*

The surveillance video is not a proper subject of judicial notice, because its contents, such as what the video illustrates, how long the incident lasted, and when officers responded, are

disputed by the parties. (*Compare* Doc. 45-1 at 11–12, 20, *with* Doc. 49 at 21–22.) Nor is the video incorporated by reference. The complaint alleges that the dayroom was under video surveillance and that Plaintiff's grievance was granted after the video was reviewed (Doc. 1 ¶¶ 44, 49), but it does not refer extensively to the video, and Plaintiff's failure-to-protect claim is based on the events in the dayroom, not on the recording of them. *See Khoja*, 899 F.3d at 1002. Defendants offer the video to establish that Plaintiff's allegations "are not true on their face" (Doc. 45-1 at 6:24), which is exactly the use the incorporation-by-reference doctrine forbids. *Khoja*, 899 F.3d at 1002-03. The undersigned declines to consider the video, and further declines to convert the motion into one for summary judgment, particularly where discovery has been stayed. *See* Fed. R. Civ. P. 12(d); Doc. 54.[4]

**C. Equal Protection (Count One)**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). To state a claim, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class. *Hartmann*, 707 F.3d at 1123; *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Because liability under section 1983 is personal, the plaintiff must plead facts showing that each defendant, through his or her own conduct, intentionally discriminated against her. *Iqbal*, 556 U.S. at 676-77.[5]

*1. Verbal Harassment and "Tacit Approval"*

To the extent Plaintiff's equal protection claim rests on derogatory comments and misgendering, it fails. "[V]erbal harassment or abuse . . . is not sufficient to state a constitutional

---

[4] Defendants' request to seal the video (Doc. 44) is addressed by separate order.

[5] Plaintiff alleges that discrimination based on transgender status is subject to heightened scrutiny (Doc. 1 ¶¶ 30, 54), and Defendants do not argue otherwise (*see* Doc. 45-1 at 15). The Supreme Court has declined to decide whether transgender status is a suspect or quasi-suspect classification. *United States v. Skrmetti*, 605 U.S. 495, 511 (2025). Here, the undersigned need not resolve the question here, because Plaintiff's claim fails at the threshold. As these findings and recommendations discuss, the complaint does not plausibly allege that any Defendant intentionally took discriminatory action against her.

deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (quoting *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)); *see Austin v. Terhune*, 367 F.3d 1167, 1171–72 (9th Cir. 2004). The Ninth Circuit has applied that rule to abusive language directed at a prisoner's protected characteristics, holding that such language does not itself rise to the level of an equal protection violation, although it "may be evidence that prison officials acted in an intentionally discriminatory manner." *Freeman v. Arpaio*, 125 F.3d 732, 738 & n.6 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). Plaintiff herself pleads the claim on that understanding, alleging that the slurs are evidence of animus that must be "coupled with" unlawful conduct to state a claim. (Doc. 1 ¶ 33.)

The Screening Order reasoned that verbal harassment may be actionable when it is calculated to cause psychological damage, and found the allegations sufficient on that basis. (Doc. 23 at 12:4-14.) That standard derives from Eighth Amendment cases, *see Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) ("verbal harassment generally does not violate the Eighth Amendment"), *amended by* 135 F.3d 1318 (9th Cir. 1998), and Plaintiff identifies no authority applying it to an equal protection claim.[6] Even under that standard, the allegations would fall short. The complaint does not attribute any particular statement to any particular Defendant or to any particular time; it attributes the quoted remarks collectively to "certain CCWF custody staff (including Defendants Felix, Haynes, and Villanueva) and inmates." (Doc. 1 ¶ 29.) And it alleges psychological harm only in conclusory terms. (*Id.* ¶ 63.)

Plaintiff's allegation that staff gave "tacit approval" to harassing inmates by failing to intervene or reprimand them (*id.* ¶ 29) fares no better. If inmates' verbal harassment does not itself violate the Constitution, an officer's failure to stop it cannot, and the complaint identifies no instance in which any Defendant declined to intervene in, or discipline, harassment by an inmate. Indeed, Plaintiff alleges that an inmate who harassed her *was* written up, and that it was a non-party lieutenant who later removed the writeup. (*Id.* ¶ 32.)

---

[6] Defendants also correctly note that the language the Screening Order attributed to *Oltarzewski*, that verbal harassment may be actionable if "calculated to cause psychological damage," does not appear in that opinion. (Doc. 45-1 at 16.) *Oltarzewski* holds only that verbal harassment or abuse is insufficient to state a constitutional claim. 830 F.2d at 139. The "calculated to . . . cause psychological damage" formulation traces to *Keenan*, 83 F.3d at 1092.

### 2. *The Disciplinary Writeups*

The remaining basis for the equal protection claim is Plaintiff's allegation that Felix, Haynes, and Villanueva issued "meritless" disciplinary writeups because she is transgender. (*Id.* ¶¶ 32-33.) In principle, that theory, intentionally disciplining a prisoner because of her membership in a protected class, is cognizable and would violate the Equal Protection Clause. However, the complaint does not plead facts making it plausible that any Defendant did so.

First, the complaint does not identify what any individual Defendant did. It alleges that three officers issued two writeups, one for attempting to use a tablet kiosk and one for boxing exercises, without identifying which Defendant issued which writeup, when either was issued, or what any Defendant said or did in connection with either. (*Id.* ¶ 32.) That collective allegation does not satisfy Plaintiff's obligation to plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The same is true of the slurs on which Plaintiff relies on to show discriminatory intent. Because the complaint does not attribute any remark to any Defendant (Doc. 1 ¶ 29), it does not connect any Defendant's alleged animus to any writeup that Defendant issued.

Second, the facts pleaded do not support a plausible inference that the writeups were issued because of Plaintiff's transgender status. Plaintiff does not allege that she did not engage in the conduct for which she was written up. She alleges that the writeups were "meritless" because the Form 115s were later voided. (*Id.* ¶ 32.) On the one hand, the voiding of a disciplinary report through the administrative process may be consistent with discriminatory motive, but on the other hand, it may also be consistent with ordinary disagreement about whether conduct warranted formal discipline. Further, voiding Form 115 has no effect on the Form 128 writeup, which Plaintiff alleges remained on her record. Nor does Plaintiff allege that any cisgender inmate engaged in comparable conduct without being written up. The only comparison she offers concerns a different inmate's writeup for harassing Plaintiff, which was removed not by any Defendant but by a non-party lieutenant. (Doc. 1 ¶ 32.) Plaintiff's allegation that Defendants issued the writeups "for the purpose of obstructing her chance of parole" (*id.* ¶ 33) is a conclusion, not a fact. *See Iqbal*, 556 U.S. at 678.

Plaintiff responds that equal protection claims are subject to ordinary notice pleading. (Doc. 49 at 10 (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).) That is correct, but the deficiency here is not a failure to plead with heightened particularity. The deficiency is the absence of any factual allegation connecting a particular Defendant's discriminatory intent to a particular adverse act. Because the complaint fails to state an equal protection claim on this ground, the undersigned need not reach Defendants' alternative argument that the writeups caused Plaintiff no injury. Accordingly, the undersigned recommends that judgment on the pleadings be granted on Count One as to Defendants Felix, Haynes, and Villanueva.

**D. Failure to Protect (Count Two)**

"[P]rison officials have a duty…to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted). To state a claim, a prisoner must allege that she was incarcerated under conditions posing a substantial risk of serious harm, and that the official knew of and disregarded that excessive risk to her safety. *Farmer*, 511 U.S. at 834, 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citations omitted). Officials who know of a substantial risk "may be found free from liability if they responded reasonably to the risk." *Id.* at 844.

*1. Verbal Harassment*

To the extent Count Two rests on Defendants' alleged failure to protect Plaintiff from verbal harassment by staff and inmates, it fails for the reasons discussed above. Because verbal harassment alone does not inflict a constitutional injury, *Oltarzewski*, 830 F.2d at 139, a failure to protect Plaintiff from it does not state an Eighth Amendment claim, and Plaintiff cites no authority suggesting otherwise.

*2. Defendant Villanueva and the August 4, 2021 Dayroom Incident*

The allegations concerning the dayroom incident state a claim against Villanueva. Plaintiff alleges that another inmate announced that she intended to hurt Plaintiff and chased her

around a dayroom she could not leave, with fists clenched, while Plaintiff turned away from the inmate's blows; that Villanueva and other officers watched from the adjacent officer station; and that they waited "several minutes" before intervening. (Doc. 1 ¶¶ 6, 38-42.) An ongoing physical attack by another inmate presents an obvious and substantial risk of serious harm, and officers who are alleged to have watched it unfold for several minutes without acting are plausibly alleged to have known of and disregarded that risk. *See Farmer*, 511 U.S. at 842; *see also Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (a prison official can violate the Eighth Amendment by failing to intervene). Whether Villanueva in fact responded reasonably, and how quickly, are questions of fact that cannot be resolved on the pleadings.

Defendants' contrary arguments are unpersuasive at this stage. Their contentions that "the entire incident lasted less than 45 seconds" and that "[o]fficers timely responded" (Doc. 45-1 at 20) depends on the video, which the Court does not consider. *See supra* Part III.B. Nor does 42 U.S.C. § 1997e(e) bar the claim. That provision applies to a "[f]ederal civil action . . . brought by a prisoner confined in a jail, prison, or other correctional facility." 42 U.S.C. § 1997e(e). The Ninth Circuit has held that the Prison Litigation Reform Act's requirements that turn on a plaintiff's status as a "prisoner" apply only to individuals who are prisoners at the time they file suit. *Talamantes v. Leyva*, 575 F.3d 1021, 1023-24 (9th Cir. 2009) (exhaustion under section 1997e(a) does not apply to non-prisoners). Plaintiff was released on parole on January 13, 2022, and filed this action on August 2, 2023. (*See* Doc. 1 ¶ 7.) Accordingly, section 1997e(e) does not apply. In any event, the provision does not bar claims for nominal or punitive damages, *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002), and Plaintiff seeks punitive damages (Doc. 1 at 19).

The remaining allegations against Villanueva do not add to this claim. Plaintiff alleges that Villanueva initially described the incident as a "mutual attack" (Doc. 1 ¶ 41 n.2), and, on information and belief, that Villanueva and others "tried to pit inmates against [her]" and "tried to cover up the attack" (*id.* ¶¶ 48, 50, 68). An after-the-fact description of an incident does not expose an inmate to a risk of harm, and the "pitting" and "cover up" allegations are unsupported by any facts describing what Villanueva did, when, or to whom. *See Iqbal*, 556 U.S. at 678. The claim against Villanueva therefore proceeds only on Villanueva's alleged failure to intervene in

the August 4, 2021 dayroom attack.

*3. Defendant Cowing*

The complaint does not state a failure-to-protect claim against Cowing. The Screening Order found the claim cognizable on the understanding that Cowing "issued a false chrono knowing it would jeopardize [Plaintiff's] chances of parole and subject her to further harm," and that Cowing told the inmate who attacked Plaintiff that Plaintiff had "wr[itten] a note" against her in order to "pit" inmates against Plaintiff and "force further altercations." (Doc. 23 at 14:5-8.) The complaint, read as a whole, does not support either theory.

As to the chrono, the complaint alleges that it was written by "Sergeant Pack," who is not a party. (Doc. 1 ¶ 45.) The only allegation tying the chrono to Cowing is Plaintiff's later statement that, had she not filed a grievance, "Sergeant Cowing's version of the event would have stood." (*Id.* ¶ 49.) The Screening Order resolved that tension by reading the complaint to allege that Cowing authored the chrono (Doc. 23 at 9 n.4), but a counseled complaint is not entitled to that construction.

In any event, the theory fails even if Cowing wrote the chrono. The issuance of a false report does not, in and of itself, support a claim under section 1983, as the Screening Order itself recognized. (*Id.* at 14 n.6 (collecting cases).) And the complaint does not allege that the chrono exposed Plaintiff to any risk of physical harm, as opposed to a risk to her parole. The complaint alleges that the chrono was corrected after Plaintiff filed a grievance, that Plaintiff was found suitable for parole while the chrono was in place, and that she was released on parole. (Doc. 1 ¶¶ 7, 47, 49.)

As to the "note," Plaintiff alleges only that she "later learned" that Cowing told the inmate who attacked her that Plaintiff had written a note against that inmate, and that she believes the note "refers to the statements she made following the August 4th attack." (*Id.* ¶ 48.) Accordingly, by Plaintiff's own account, Cowing's statement followed the attack and could not have caused it. The complaint does not allege that Cowing was present during the attack, that Cowing's statement led to any subsequent threat or assault, or any facts supporting Plaintiff's belief that Cowing "tried to pit inmates against" her. (*Id.* ¶¶ 48, 68.) Those allegations do not plausibly show

that Cowing knew of and disregarded an excessive risk to Plaintiff's safety. *See Iqbal*, 556 U.S. at 678-79.

Accordingly, the undersigned recommends that judgment on the pleadings be granted on Count Two as to Cowing, and as to Villanueva except to the extent the claim is based on the August 4, 2021 dayroom incident.

**E. Qualified Immunity**

Because the undersigned recommends dismissal of all claims other than the dayroom claim, Defendants' assertion of qualified immunity as to those claims is moot, without prejudice to Defendants' ability to raise the defense as to any claim reasserted in an amended complaint. As to the dayroom claim, the undersigned recommends that the request be denied without prejudice. Qualified immunity is generally not amenable to resolution under Rule 12 where the facts necessary to establish the defense are not apparent from the complaint. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999); *Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004). Defendants' argument on this claim is premised on the proposition that officers "respond[ed] to a verbal altercation and protect[ed] a victim inmate within seconds," resulting in no physical injury. (Doc. 45-1 at 23.) That characterization depends on the video and contradicts the allegations of the complaint, which the undersigned must accept as true at this stage. Defendants may reassert the defense at a later, appropriate stage.

**F. Leave to Amend**

If a motion for judgment on the pleadings is granted, the court has discretion to grant or deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Although leave to amend should be freely given, it may be denied where amendment would be futile or where other factors, including undue delay and prejudice to the opposing party, weigh against it. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Hartmann*, 707 F.3d at 1130 ("A district court may deny leave to amend when amendment would be futile.").

Under that standard, leave to amend should be granted unless it is clear that the deficiencies in the complaint cannot be cured by amendment. *Jackson v. Barnes*, 749 F.3d 755,

766–67 (9th Cir. 2014); *Lopez*, 203 F.3d at 1130. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052.

Some of the theories addressed above fail as a matter of law, and additional facts could not cure them. Those theories include: (1) an equal protection claim based on verbal harassment, or on tacit approval of inmates' verbal harassment; (2) a failure-to-protect claim based on a failure to protect Plaintiff from verbal harassment; and, (3) a failure-to-protect claim based on the issuance of a false chrono. As to these theories, amendment would be futile, and an amended complaint should not reassert them. *See Hartmann*, 707 F.3d at 1130.

However, the remaining deficiencies are factual. The equal protection claim fails because the complaint does not connect any particular Defendant's discriminatory intent to any particular adverse act, such as a writeup that Defendant issued. The failure-to-protect claim against Cowing fails because the complaint does not allege facts showing that Cowing knew of and disregarded a substantial risk to Plaintiff's safety. Nonetheless, the undersigned cannot say that these deficiencies could not be cured by the allegation of additional facts.

The undersigned notes that Plaintiff, who has been represented by counsel throughout, was on notice of similar deficiencies before this action was filed and declined to amend after the parties met and conferred in October 2023. (Doc. 7-2; Doc. 7-3 ¶ 2.) Those circumstances do not amount to overcoming the presumption in favor of amendment and denying Plaintiff an opportunity to amend. Plaintiff has not previously amended her complaint in this action, and the only ruling on the sufficiency of her pleading in this action, the Screening Order, found that her claims were cognizable. (Doc. 23 at 14.) Plaintiff has not yet had an opportunity to amend in response to a ruling in this action identifying the deficiencies discussed above. Nor have Defendants shown that a short opportunity to amend would cause them undue prejudice. Discovery is stayed, no trial date has been set, and the claim that survives this motion will proceed regardless. (*See* Doc. 54.) Accordingly, because this is Plaintiff's first opportunity to amend, the undersigned recommends that she be granted leave to amend.

Plaintiff is advised that an amended complaint supersedes the original complaint, and

must be complete without reference to the prior or superseded pleading. L.R. 220. Any amended complaint should be limited to curing the deficiencies identified in these Findings and Recommendations, and should not add new claims or new defendants, which require leave of Court under Rule 15(a)(2). If Plaintiff elects not to file an amended complaint, the action will proceed on the claim that survives this motion.

## IV. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the undersigned RECOMMENDS that:

1. Defendants' request for judicial notice (Doc. 45-2) be GRANTED IN PART and DENIED IN PART, as follows: the Court take judicial notice of the existence and contents of Exhibits A and B, but not of the truth of any statement therein or any disputed inference drawn from them; and the request be DENIED as to Exhibit C;

2. Defendants' motion for judgment on the pleadings (Doc. 45) be GRANTED IN PART and DENIED IN PART, as follows:

   a. The motion be GRANTED as to Count One (Fourteenth Amendment equal protection), and that claim be DISMISSED as to Defendants Felix, Haynes, Villanueva, and Does 1 through 50, with leave to amend, except that leave to amend be DENIED as to any theory based solely on verbal harassment or tacit approval of inmates' verbal harassment;

   b. The motion be GRANTED as to Count Two (Eighth Amendment failure to protect) against Defendant Cowing, and that claim be DISMISSED with leave to amend, except that leave to amend be DENIED as to any theory based on verbal harassment or on the August 5, 2021 chrono;

   c. The motion be GRANTED as to Count Two against Defendant Villanueva and Does 1 through 50 to the extent that claim is based on verbal harassment, the August 5, 2021 chrono, the alleged "pitting" of inmates against Plaintiff, or any post-incident conduct, and that claim be DISMISSED to that extent, with leave to amend except as to the theories based on verbal harassment or the August 5, 2021 chrono;

d. The motion be DENIED as to Count Two against Defendant Villanueva and the Doe officers present in the Unit 505 officer station, based on their alleged failure to intervene in the August 4, 2021 dayroom attack; and

e. Defendants' request for qualified immunity be DENIED as moot as to the dismissed claims and DENIED without prejudice as to the remaining claim;

3. Plaintiff be granted thirty (30) days from the date of service of any order adopting these Findings and Recommendations to file a first amended complaint curing the deficiencies identified herein, which shall not reassert the theories found to fail as a matter of law, add new claims, or add new defendants; and Defendants respond to any first amended complaint within the time provided by Federal Rule of Civil Procedure 15(a)(3);

4. If Plaintiff does not timely file a first amended complaint, Defendants Felix, Haynes, and Cowing be DISMISSED from this action, and this action proceed solely on Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Villanueva and the Doe officers present in the Unit 505 officer station, based on the August 4, 2021 dayroom incident; and,

5. The stay of discovery (Doc. 54) remain in effect until the time to file a first amended complaint has expired or, if one is filed, until Defendants have responded to it, and the matter be referred back to the undersigned for further proceedings, including issuance of an amended discovery and scheduling order.

These Findings and Recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy of these Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id.* The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not

consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated: **November 9, 2026**

Erin Sun Castillo

UNITED STATES MAGISTRATE JUDGE